[No. 10548.   Department Two.   July 13, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Laura E. Flint et al., Plaintiff*, v. THE SUPERIOR COURT FOR THURSTON COUNTY, *Respondent*.[1]

EMINENT DOMAIN—PURPOSES—PLEADING AND PROOF—RAILROAD RIGHT OF WAY. In eminent domain proceedings to condemn a right of way necessary for a new railway line, and also necessary for the petitioner's use in the construction, maintenance, and operation of another old line which is coincident with the new line at a certain point, land may be condemned for the purpose of a necessary slope on moving the old line to the west in order to make a fill for the new line, forty feet above the old line.

Certiorari to review an order of the superior court for Thurston county, Mitchell, J., entered June 20, 1912, adjudging a public use in proceedings to condemn land for a

[1]Reported in 124 Pac. 1127.

railroad right of way, after a hearing before the court. Affirmed.

*Thos. M. Vance* and *H. L. Parr,* for relators.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for respondent.

MORRIS, J.—Writ of certiorari to review the order of the lower court in entering its order of public use and calling a jury to ascertain the damages, in a proceeding in which the Northern Pacific Railway Company is seeking to condemn lands of the relators. The writ is sued out upon the ground that the evidence upon the preliminary hearing failed to show that the lands were desired or necessary for the purposes set forth in the petition, and did affirmatively show that the lands were required for purposes other than those disclosed in the petition. The purpose for which it is sought to appropriate these lands is set forth in the petition as follows:

"That in the construction and operation of its line of railroad from the city of Tacoma to the city of Portland for the double tracking and improvement thereof in the construction of tunnel, switches, side tracks, turnouts and elimination of dangerous and undesirable grades and curves, it is necessary for petitioner to condemn and appropriate for a part of its right of way certain lands and premises (describing them); that the above described premises are necessary for petitioner's use in the construction, maintenance, and operation of its said line of railroad from the city of Tacoma through Pierce county and other counties in the state of Washington to the city of Portland in the state of Oregon, and to Grays Harbor, Willapa Harbor and other points in the state of Washington, and the interests and necessities of the public require the appropriation and condemnation of said premises by petitioner for the purposes aforesaid."

The evidence shows that, at the point in question, the new line of the Northern Pacific Railway Company from Tacoma to Portland, known as the "water line," is coincident with

what is generally known as the Grays Harbor line; that it is the intention at this point to lay and maintain four tracks for the use of the water line, and that in order to do so and maintain the desired grade, it was necessary to construct a seventy-foot fill with appropriate and necessary slopes. The water line at this point is forty feet above the Grays Harbor line and, in order to maintain the desired slope, it will be necessary to move the Grays Harbor line approximately sixty feet to the west of its present location and about forty feet east of the present west line of the right of way. It is upon this fact that relators base their attack upon the ruling of the lower court, contending that it is thus shown that the lands of relators are required to furnish slopes to the embankment supporting the Grays Harbor line and not the water line.

The evidence, in our opinion, does not support this contention. The evidence of the engineer in charge of the work upon this point is as follows:

"Q. Suppose that there was no Olympia-Grays Harbor line to be taken care of, is there sufficient space beyond your four hundred-foot strip there to take care of your slope? A. Not entirely, no sir. Q. Isn't it a fact that this 100x300 foot strip is to take care of the slopes made necessary by the change in location and the moving of the Olympia-Grays Harbor line rather than by the original construction of the water level line, the main line? A. Well, the two are so closely related, what is necessary for one is necessary for the other; in other words, in the construction of the new line you naturally have to meet these problems, to take care of the old line where they interfere. The direct cause is the building of the new line. Q. Well, I don't think you answered my question; what I asked was this, if you can tell me as an engineer isn't this land necessary to protect the slope of the Olympia-Grays Harbor line as it is to be moved, and not the slope of the big four upon the main line? A. Well, a portion of it is and a portion of it is not. Q. What portion is for that purpose? A. Probably half of it would be necessary for that. Q. . . . Given a four hundred-foot right of way at this particular point, do you mean to be understood as

saying that to construct a four-track railway along there it is necessary to take this one hundred feet?  A.  Well, I will answer it in this way: It is necessary for reasonable construction."

No other witness testified upon this point.  This testimony is clearly sufficient to enable the lower court to hold that the necessities of the water line demanded the lands of relators for the construction and maintenance of a proper slope.  By referring to the purpose of the condemnation, as quoted from the petition, it will be noted that the lands of relator are not required for the sole purpose of the water line, but that it is also set forth that they "are necessary for petitioner's use in the construction, maintenance and operation of its said line of railroad from the city of Tacoma . . . to Grays Harbor . . . . and other points . . ."  The last described purpose would include the so-called Grays Harbor line.

We are therefore of the opinion that no error has been committed by the lower court, and its orders and judgments here reviewed are affirmed.

MOUNT, ELLIS, and FULLERTON, JJ., concur.